UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
JED LINEBERRY,                      )
                                    )
              Plaintiff,            )
                                    )
       v.                           )   Civil Action No. 11-2056 (RMC)
                                    )
FEDERAL BUREAU OF PRISONS, *et al.*,)
                                    )
              Defendants.           )
_____ )

**MEMORANDUM OPINION**

This matter is before the Court on Defendant's [sic] Motion to Dismiss [Dkt. #11].[1] For the reasons discussed below, the motion will be granted.

I.  BACKGROUND

TRULINCS is the system by which prisoners in the custody of the Federal Bureau of Prisons ("BOP") may correspond electronically and in writing with the public. *See generally* Mem. in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mem."), Attach. B (Program Statement P5265.13, Trust Fund Limited Inmate Computer System (TRULINCS) – Electronic Messaging (Feb. 19, 2009)) (hereinafter "Program Statement 5265.13").  The stated program objectives are:

- To provide inmates with an alternative means of written communication with the public.
- To provide the [BOP] with a more efficient, cost-effective, and secure method of managing and monitoring inmate communication services.

---

[1] Also before the Court is Plaintiff's Motion for Summary Judgment [Dkt. #19]. The facts that Plaintiff purports are undisputed for purposes of summary judgment are essentially restatements of the factual allegations set forth in his Complaint, and the motion fails to comply in form and in substance with Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 7(h). The motion will be denied.

1

- To reduce the opportunities for illegal drugs or contraband to be introduced into [BOP] facilities through inmate mail.

Program Statement 5265.13 at 1.

Generally, an inmate must "place a TRULINCS-generated mailing label on all outgoing postal mail," and if he fails to do so, "the mail is returned to the inmate for proper preparation." *Id.* at 5; *see also* Program Statement P5265.14, Correspondence (Apr. 5, 2011) at 7 ("[A]ll outgoing mail, for institutions with a TRULINCS-generated mailing label system, must utilize these mailing labels on all outgoing correspondence, in accordance with the Program Statement Trust Fund Limited Inmate Computer System (TRULINCS) -- Electronic Messaging.") (emphasis removed). An inmate using TRULINCS "must establish a contact list, which consists of people with whom [he wants] to communicate while [he is] incarcerated," and upon confirmation from the potential recipients of inmate correspondence, "through use of the TRULINCS program, [the inmate] may communicate . . . by way of electronic messaging and postal mail" with people on the approved contact list. Defs.' Reply to Pl.'s Resp. to Defs.' Mot. to Dismiss Pl.'s Compl. ("Defs.' Reply"), Decl. of Rocky Patterson ("Patterson Decl.") ¶ 2. In order to send "postal mail to a person on [his] contact list, the inmate must use the TRULINCS program to generate a mailing label," a step designed "to ensure that contraband or illegal drugs are not smuggled into our prison facility through the use of other types of mailing labels." *Id.*, Patterson Decl. ¶ 2. If outgoing mail does not bear a TRULINCS-generated label, it "is intercepted through [the] mail sorting process and returned to" the inmate. *Id.* "Inmates who use mailing labels for other than their intended purpose may be subject to disciplinary action for misuse of Government property." Program Statement 5265.13 at 5.

Plaintiff's "federal incarceration has taken away from him the means to have access to the postal service other than the institutional mail box system." Compl. at 4. Now that

2

use of TRULINCS is mandatory at the Federal Correctional Institution in Texarkana, Texas ("FCI Texarkana"), the facility in which Plaintiff currently is incarcerated, he must "apply to TRULINC[S]" for a mailing label, and "[i]f TRULINCS deems it appropriate, it will approve the request for access to postal service by providing a label." *Id.*  If TRULINCS does not approve the request, Plaintiff alleges, he is denied "access to the postal service." *Id.*  With the exception of "a few . . . letters going to a court," Plaintiff explains that "[e]very letter he has placed into the institutional mail has been returned to him." *Id.*  For example, he states that thrice he "attempted to send out mail to his father," but the BOP allegedly "returned the letter [because] the outgoing mail did not have a mailing label approved by TRULINCS." *Id.* at 6.  Now Plaintiff "refuse[s] to apply to TRULINC[S] for permission in order to exercise his constitutional right[s]" under the First Amendment to the United States Constitution. *Id.* at 4.   In addition, Plaintiff objects to "[t]he mandatory prior approval of a request in order to have access to the postal service, the possibility of [b]eing the access to the postal service as well as the limited number of labels and access to the one computer that services 1200 inmates, located in the law library, closed on all holidays, Sundays, for counts, staff meetings etc[.]" *Id.* at 8.  For these alleged "blatant violation[s] of [his] First Amendment Right to have unrestricted access to 'FREEDOM OF SPEECH', FREEDOM 'OF THE PRESS', to the 'ESTABLISHMENT OF RELIGION'[,] protection for 'FREE EXERCISE' of religion, his right to 'PEACEABL[E] ASSEMBL[Y]' and his right to 'PETITION' the government," *id.* at 3, Plaintiff demands injunctive relief, *id.* at 6; *see id.* at 12.[2]

---

[2]    Plaintiff later clarifies that he "is not seeking damages." Pl.'s Resp. to Def.'s Mot. to Dismiss at 4.  Instead, he "is only seeking [to have] the mandatory provision [of Program Statement 5265.13] removed," *id.*, and "recovery cost for prosecuting this case," *id.* at 5.

Acknowledging that he must "complete the administrative remedy process before he request[s] assistance from the court," *id.* at 8-9, Plaintiff submitted an informal inmate grievance to Mr. Hamilton, a counselor, who instructed Plaintiff to submit the request instead to Rocky Patterson, *id.* at 9, the Trust Fund Supervisor at FCI Texarkana, Patterson Decl. ¶ 1. Patterson's response merely referred to Program Statement 5265.13. Compl. at 9; *see* Pl.'s Resp. to Def.'s Mot. to Dismiss ("Pl.'s Opp'n"), Ex. (Inmate Request to Staff dated September 9, 2011). When Plaintiff attempted to file a formal inmate grievance, Mr. Hamilton allegedly "became hostal [sic] and refused" to give Plaintiff the proper form. *Id.* Plaintiff's attempts to submit his grievance to another counselor and to his Unit Manager were unsuccessful. *Id.* at 10. According to Plaintiff, any attempt by an inmate "to challenge any policy of the BOP" meets with resistance from BOP staff members who "will do everything in within their power to block the challenge as well as constantly harass, intimidate and persecute the inmate that questions" a policy. *Id.* at 9-10. And Plaintiff has acknowledged his failure to "request[] or attempt[] to file an administrative remedy for tort (for this claim)," *id.* at 11, under the Federal Tort Claims Act ("FTCA"), *see* 28 U.S.C. § 2671 *et seq.*, to the BOP, *see* 28 C.F.R. § 543.31.

## II.  DISCUSSION

*A.  This Court Lacks Personal Jurisdiction Over Patterson In His Individual Capacity*[3]

Plaintiff brings this action against Rocky Patterson in his individual capacity under *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), under which he has "an implied private action for damages against federal officers

---

[3] For purposes of this discussion, the Court presumes, without deciding, that service of process has been effected properly on Patterson in his individual capacity and that counsel is authorized to represent Patterson in his individual capacity.

4

alleged to have violated [his] constitutional rights," *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001).

Patterson does "not work or reside in the District of Columbia," nor does he "have property interests in the District of Columbia." Defs.' Reply, Patterson Decl. ¶ 3. His "duties as Trust Fund Supervisor do not cause [him] to transact business in the District of Columbia," as these duties "are limited to serving the inmates" at FCI Texarkana." *Id.* Patterson, then, is not "a person domiciled in, organized under the laws of, or maintaining [a] principal place of business in, the District of Columbia" over whom this Court may exercise jurisdiction. D.C. Code § 13-422. In order to determine whether the Court may exercise personal jurisdiction over this non-resident defendant, the analysis begins by referencing the law of the District of Columbia, *United States v. Ferrara*, 54 F. 3d 825, 828 (D.C. Cir. 1995), specifically its long-arm statute which in relevant part provides:

> A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's –
>
> (1) transacting any business in the District of Columbia;
>
> (2) contracting to supply services in the District of Columbia;
>
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; [or]
>
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia[.]

D.C. Code § 13-423(a). None of these provisions appear applicable. The Court must also consider "whether the exercise of personal jurisdiction would comport with the requirements of due process." *Kurtz v. United States*, __ F. Supp. 2d __, __, 2011 WL 1549216, at *1 (D.D.C.

5

Apr. 26, 2011) (citing *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F. 3d 1343, 1347 (D.C. Cir. 2000)). To this end, the Court examines whether Patterson's "minimum contacts" with the District of Columbia, if any, are such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). If, for example, Patterson engages in conduct "by which [he] purposefully avails [himself] of the privilege of conducting activities" in the District of Columbia, "thus invoking the benefits and protections of its laws," *Burger King Corp. v. Rudzewicz*, 471 U.S. 463, 475 (1985), this Court may exercise personal jurisdiction over him. *See id.*

At most Patterson has enforced at FCI Texarkana a policy which originated at BOP's Central Office in Washington, D.C. *See* Pl.'s Opp'n at 7-8. "[T]he mere enforcement of a regulation that was promulgated [in the District of Columbia] does not suffice to confer personal jurisdiction to a court in this district over [an] individual[] who [is] not located in this district and who committed no acts in this district, when the alleged injury sustained by the plaintiff . . . did not occur in this district either." *Zakiya v. United States*, 267 F. Supp. 2d 47, 53-54 (D.D.C. 2003). It cannot be said that Patterson transacts business, contracts to supply services, causes any injury to Plaintiff, or otherwise avails himself of the privilege of conducting activities in the District of Columbia. Under these circumstances the exercise of personal jurisdiction over Patterson does not comport with due process. Patterson will be dismissed as a party defendant, as will Plaintiff's constitutional claim against him.

### B. *Plaintiff's Claim Against Patterson In His Official Capacity Is Dismissed*

"Official capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent," such that "an official capacity suit is, in

all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Accordingly, the Court treats any claim against Patterson in his official capacity as if it were brought against the United States directly. *See, e.g., Morton v. Bolyard*, 810 F. Supp. 2d 112, 115 (D.D.C. 2011) ("To the extent that plaintiff sues the defendants in their official capacities, his claims are treated as if they were brought against the federal government itself."). As is discussed below, the claims against the BOP will be dismissed.

### C. Plaintiff's Claims Against the BOP Are Dismissed[4]

Defendants argue that the complaint "should be summarily dismissed because Plaintiff has failed to exhaust his administrative remedies with regard to the claims raised in this lawsuit." Defs.' Mem. at 5.

#### 1. Sovereign Immunity

Defendants move to dismiss Plaintiff's FTCA claim for his failure to exhaust, *id.* at 7, a matter that Plaintiff readily concedes. *See* Compl. at 11 ("As for the [FTCA, Plaintiff] has not attempted to file a claim."). Generally, the FTCA provides that the "United States shall be liable [for tort claims] in the same manner and to the same extent as a private individual under

---

[4] Defendants characterize Plaintiff's FTCA claim as arising from the retention and return of mail by BOP officers. *See* Def.'s Mem. at 8. Because the FTCA expressly excludes claims "arising in respect of . . . the detention of goods, merchandise, or other property by . . . any . . . law enforcement officer," 28 U.S.C. § 1680(c), and because the "[c]onfiscation of inmate mail" qualifies as the detention of property by a law enforcement officer, Def.'s Mem. at 8-9, Defendant argues that the FTCA claim must be dismissed for lack of subject matter jurisdiction, *id.* at 10. Plaintiff reiterates that "[t]he damage is that Defendants are blatantly violating [his] First Amendment. Not some singular piece of mail." Pl.'s Opp'n at 10. The Court therefore denies Defendants' motion to dismiss the FTCA claim on the ground that it is excluded by § 2680(c).

7

like circumstances." 28 U.S.C. § 2674(a).[5] It operates as a limited waiver of sovereign immunity, rendering the United States amenable to suit for certain, but not all, tort claims. *See, e.g., Richards v. United States*, 369 U.S. 1, 6 (1962). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994).

A viable claim under the FTCA requires that a claimant present his claim to the appropriate federal agency prior to filing a civil action in a federal district court. *McNeil v. United States*, 508 U.S. 106, 113 (1993); 28 U.S.C. § 2675(a) (requiring claimant to present claim "for money damages for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . to the appropriate Federal agency" from which written notice of the denial of the claim has been forwarded to the claimant before a suit may be filed). "The FTCA bars [a] claimant[] from bringing suit in federal court until [he has] exhausted [his] administrative remedies." *McNeil*, 508 U.S. at 113. Plaintiff's admitted failure to submit a claim to the BOP prior to filing this lawsuit deprives this Court of subject matter jurisdiction. *See Henderson v. Ratner*, No. 10-5035, 2010 WL 2574175, at *1 (D.C. Cir. June 7, 2010) (per curiam) (affirming dismissal of FTCA claim where "[a]ppellant failed to demonstrate that he exhausted his administrative remedies before filing suit in the district court"); *Hammond v. Fed. Bureau of Prisons*, 740 F. Supp. 2d 105, 111 (D.D.C. 2010) (dismissing FTCA claim for lack of subject matter jurisdiction where plaintiff had not "established by a preponderance of the evidence that

---

[5] Only the United States can be a defendant to a claim under the FTCA. *See* 28 U.S.C. § 2679(a); *Cox v. Sec'y of Labor*, 739 F. Supp. 28, 29 (D.D.C. 1990). Plaintiff's pleadings are defective insofar as the BOP, not the United States, is named a defendant to this action. The Court declines to dismiss the FTCA case or otherwise penalize this *pro se* plaintiff for a pleading defect which could be remedied by amending the complaint.

he administratively exhausted his FTCA claim with the BOP before commencing this action");

*see also Hurt v. Lappin*, 729 F. Supp. 2d 186, 190 (D.D.C. 2010) (dismissing premature FTCA claim which plaintiff had submitted to the BOP less than two months prior to filing civil action).

    2. Exhaustion of Administrative Remedies under the Prison Litigation Reform Act

In relevant part, the Prison Litigation Reform Act ("PLRA") provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined to any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Defendants argue that the Court lacks subject matter jurisdiction over the challenge to the constitutionality of Program Statement 5265.13 because Plaintiff has failed to exhaust his available administrative remedies for purposes of the PLRA. Defs.' Mem. at 5.

The PLRA's exhaustion requirement is mandatory and "applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002); *see Jones v. Bock*, 549 U.S. 199, 211 (2007). Exhaustion under the PLRA requires proper exhaustion, meaning that a prisoner must comply with procedural rules, including filing deadlines, as a precondition to filing a civil suit in federal court, regardless of the relief offered through the administrative process. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Booth v. Churner*, 532 U.S. 731, 741 (2001). Thus, a prisoner may file a civil action concerning conditions of confinement under federal law only after he has exhausted the prison's administrative remedies. *See Jackson v. District of Columbia*, 254 F.3d 262, 269 (D.C. Cir. 2001). Exhaustion under the PLRA is not a jurisdictional requirement, however. *See Jones*, 549 U.S. at 216; *Woodford*, 548 U.S. at 101. It is instead an affirmative defense, *Jones*, 549 U.S. at 216, which "the defendants have the burden of pleading and proving." *Brengettcy v. Horton*,

423 F.3d 674, 682 (7th Cir. 2005) (quoting *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (internal quotation marks omitted)); *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir.) (holding that "nonexhaustion under § 1997e(a) . . . does not impose a pleading requirement," but "creates a defense [such that] defendants have the burden of raising and proving the absence of exhaustion"), *cert. denied sub nom Alameida v. Wyatt*, 540 U.S. 810 (2003).

The BOP's Administrative Remedy Program is the means by which a federal inmate may "seek formal review of an issue relating to any aspect of his confinement." Defs.' Mem., Attach. A ("Watts Decl.") ¶ 4. The process is described as follows:

> First, the program allows an inmate to resolve the matter informally. However, if an informal resolution is unsuccessful, the inmate may file a request at the institutional level to the Warden by filing a Form BP-9. *See* 28 C.F.R. § 542.14(a). If the inmate is not satisfied with the Warden's response, [he] has 20 calendar days to file an appeal of the issue(s) to the Regional Director by filing a Form BP-10. *See* 28 C.F.R. § 542.15(a). Finally, if the inmate is dissatisfied with the review and determination by the Regional Director, [he] has 30 calendar days to file an appeal by filing a Form BP-11 with National Inmate Appeals of the Office of General Counsel (OGC). *See* 28 C.F.R. § 542.15(a).

*Id.*, Watts Decl. ¶ 4. The Administrative Remedy Clerk, upon receipt of an inmate's grievance, "stamps the form with the date received, logs it into the SENTRY index as received on that date, and writs the 'Remedy ID' as assigned by SENTRY on the form." *Id.* ¶ 5.

A review of SENTRY yielded no "record showing that [Plaintiff] has filed a formal Administrative Remedy regarding any grievance regarding the use of the Trust Fund Limited Inmate Computer System ('TRULINCS')." *Id.*, Watts Decl. ¶ 6. Defendants thus

demonstrated that Plaintiff "has failed to exhaust his administrative remedies on staff confiscating his mail and returning it to him." *Id.*, Watts Decl. ¶ 7.

Plaintiff acknowledges that he has not exhausted his administrative remedies for purposes of the PLRA. Instead, he "ask[s] this court permission to allow him to by pass [sic] the administrative remedy procedure," Compl. at 9, because the procedure was not available to him, *id.* at 10. He alleges that neither his counselor nor his Unit Manager provided him the appropriate form for submitting a formal inmate grievance, *see* Compl. at 9-10, and without access to the first step of the process, he could not have been expected to complete the process, *see id.* at 10. "[P]rison officials refused to give him the form and with hostility forced him out of [the] office and told [him] not to return." *Id.*

The PLRA requires that an inmate exhaust only those administrative remedies "as are available." 42 U.S.C. § 1997e(a). Courts have recognized that exhaustion is not required "when circumstances render administrative remedies 'effectively unavailable.'" *Sapp v. Kimbrell,* 623 F.3d 813, 822 (9th Cir. 2010) (internal quotation marks and citations omitted). Neither lack of awareness of a grievance procedure, *see Albino v. Baca*, 697 F.3d 1023 (9th Cir. 2012), nor an inmate's assessment of the viability of the process, *see Banks v. Lappin*, 539 F. Supp. 2d 228, 237-38 (D.D.C. 2008), can excuse the exhaustion requirement. If, however, "prison officials refuse to provide the required grievance forms upon request or ignore such a request," *Albino*, 697 F.3d at 1034 n.7, or if the inmate receives "threats of retaliation for filing a grievance," *id.* (citing *Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008)), exhaustion may be excused. For purposes of this motion, the Court accepts as true Plaintiff's factual

11

allegations as to the unavailability of the administrative remedy process at FCI Texarkana, and the claim will not be dismissed for failure to exhaust administrative remedies.

### D.  Plaintiff Fails to State a Constitutional Claim Upon Which Relief Can Be Granted

Defendants argue for dismissal of the complaint on the ground that it merely sets forth "conclusory allegations that the BOP's policy of requiring him to affix a TRULINCS-generated label on his outgoing postal mail infringes on his First Amendment rights." Defs.' Mem. at 14.  Such unsupported assertions, Defendants contend, do not recognize that "the objectives of . . . the TRULINCS program . . . serve[] a legitimate penological interest." *Id.* "The burden . . . is not on the State to prove the validity of prison regulations but on the prisoner to disprove it," *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003), and Defendants state that "Plaintiff has failed to assert any facts to disprove the legitimacy of [TRULINCS'] implementation by BOP." *Id.*

Plaintiff is well aware, *see* Compl. at 6, that "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84 (1987); *see Levitan v. Ashcroft*, 281 F.3d 1313, 1318 (D.C. Cir. 2002) ("It is well established that prisoners retain constitutional rights in prison, including free exercise rights under the First Amendment.").  However, "[t]he very object of imprisonment is confinement," and an inmate necessarily surrenders "[m]any of the rights and privileges enjoyed by other citizens." *Overton*, 539 U.S. at 131.  Thus, "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).

Plaintiff is not the first federal prisoner to challenge the constitutionality of Program Statement 5265.13, and he is not the first to lose on the merits. *See Russell v. Whitehead*, No. 09-3007, 2010 WL 2367270, at *5 (D. Md. June 9, 2010) (rejecting First Amendment freedom of speech challenge to implementation of TRULINCS' mailing label requirement); *Jones v. Daniels*, No. 10-0088, 2010 WL 2228355, at *11 (E.D. Ky. June 2, 2010) (dismissing with prejudice plaintiff's "First Amendment claims challenging all aspects of the TRULINCS policy, Program Statement 5265.13," including provision that outgoing postal mail bear a TRULINCS-generated mailing label); *see also Parisi v. Lappin*, No. 10-40030, 2011 WL 1045016, at *2-3 (D. Mass. Mar. 18, 2011) (concluding that "Program Statement 5365.13 passes constitutional muster," as it is "reasonably related to legitimate penological interests," that is, "to protect the public and reduce crime"); *Dunlea v. Fed. Bureau of Prisons*, No. 3:10-cv-214, 2010 WL 1727838, at *2 (D. Conn. Apr. 20, 2010) (concluding that federal inmate's constitutional or federally protected rights were not violated when Warden refused her TRULINCS privileges to send electronic messages to her friends and family because she had used a computer in the commission of the crimes for which she was serving her sentence), *abrogated on other grounds by Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135 (3d Cir. 2010). Neither the requirement of a TRULINCS-generated mailing label nor the return of mail lacking such a label violates Plaintiff's First Amendment rights. Furthermore, Plaintiff's admission that "a few of the letters going to a court" have been mailed notwithstanding his purported refusal "to apply to TRULINC for permission," Compl. at 4, undermines his claim that the implementation of Program Statement 5265.13 denies him the right to petition the government or to access the courts. There are no factual allegations set forth in the complaint to support Plaintiff's claims regarding access to the press, the establishment or exercise of religion, and peaceable assembly.

The Court is left with "legal conclusion[s] couched as . . . factual allegation[s]," and "naked assertions devoid of further factual enhancement," *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted), which fall short of a viable First Amendment claim.

## III.  CONCLUSION

Plaintiff's complaint fails to allege adequately a First Amendment claim.  Even if it had, the complaint still would be subject to dismissal in part because the Court lacks personal jurisdiction over Rocky Patterson and sovereign immunity bars his claim for damages against the BOP.  Accordingly, Defendants' motion to dismiss will be granted.  An Order accompanies this Memorandum Opinion.

Date: February 15, 2013                              /s/
                                                                ROSEMARY M. COLLYER
                                                                United States District Judge